MOUNT VERNON FIRE INSURANCE COMPANY, Plaintiff,

v.

Theresa HARRIS, Sherman Richardson and Willie J. Lowe, as Administrator of the Estate of Cassandra Lowe, Defendants.

No. CV 99–7597(RJD).

United States District Court, E.D. New York.

March 29, 2002.

Michael A. Miranda, Miranda & Sokoloff, LLP, Mineola, NY, for Plaintiff.

Frank A. Andrea, III, Andrea & Towsky, Garden City, NY, for Defendant Lowe.

### *MEMORANDUM & ORDER*

DEARIE, District Judge.

This case arises out of a fire that occurred on September 27, 1997 at the premises located at 164–05 107th Street, Jamaica, New York, owned by defendant Theresa Harris, in which Cassandra Lowe suffered injuries that led to her death. Willie Lowe, executor of the estate of Cassandra Lowe, has brought an action for negligence and wrongful death in the Supreme Court of the State of New York, County of Queens, against defendants Harris and Richardson. Plaintiff Mount Vernon Fire Insurance Company ("Mount Vernon") brings this declaratory judgment action to determine whether it must defend and indemnify Harris under an insurance policy issued to her covering the premises in question. Lowe moves for summary judgment dismissing the complaint against the defendants and directing plaintiff to defend and indemnify defendant Harris in the underlying state court action. Mount Vernon cross-moves for summary judgment. For the reasons explained below, defendant's motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is granted.

### BACKGROUND

At all times relevant to this suit, Theresa Harris was the owner of the premises located at 164–05 107th Street, Jamaica, New York (the "premises"). Prior to September 27, 1997, Mount Vernon had issued to Harris a liability insurance policy, numbered CL 2082989, providing coverage for the premises for the period from November 7, 1996 through November 7, 1997. Under Section IV(2)(a) of the policy, Harris was required to notify plaintiff "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Aff. of Bea Reale, Ex. A ("Reale Aff. ___").

On September 27, 1997, there was a fire at the premises. Cassandra Lowe was a tenant in the premises on that date. She suffered severe injuries in the fire that ultimately led to her death on October 6, 1997. On or about December 5, 1997, the estate of Cassandra Lowe retained the law firm of Andrea & Towsky, Esqs. ("Andrea & Towsky" or the "firm"). By letter dated that same day, December 5, 1997, and addressed to defendants Harris and Richardson, the firm notified Harris of the estate's claim under the aforementioned policy arising out of the fire of September 27. The letter also requested that Harris divulge the name and address of her insurance company and that she forward the letter to them "so that [the firm] may deal directly with them." Affirmation of Frank A. Andrea, Ex. C ("Andrea Affirmation ___").

Plaintiff did not receive this letter, however, until March 4, 1998, when it received a copy of the letter as part of a six page fax communication from its agent, Morstan General Agency. Upon receipt of this letter, plaintiff retained Galsan Associates, Inc. ("Galsan"), an independent investiga-

tive company, to investigate the claim. On March 10, plaintiff wrote to Andrea & Towsky acknowledging the claim and asking them for more information. Galsan provided plaintiff with a report of its investigation on March 27, 1998. The report contained a handwritten statement, signed by Harris on March 24, 1998, stating that she was aware of the fire on the same day that it occurred and that she knew that three people had been injured. By letter dated April 23, 1998, and addressed to Harris, plaintiff disclaimed its obligation to defend or indemnify Harris in connection with the fire of September 27, 1997. Plaintiff cited Harris's failure to give timely notice of the incident pursuant to Section IV(2) of her policy as its grounds for disclaimer. A copy of this letter was sent to Andrea & Towsky.

On October 5, 1998, Willie Lowe, as the executor of the estate of Cassandra Lowe, commenced an action in the Supreme Court of New York, Queens County against Harris and Richardson. Plaintiff then commenced this action for declaratory judgment seeking from this Court a declaration that it is not required to defend or indemnify Harris in the underlying state court action. Both parties have moved for summary judgment.

In support of his motion, Lowe raises two arguments. First, Lowe claims that plaintiff delayed too long from the time it first received notice of the claim on March 4, 1998, until the time it finally sent its notice of disclaimer to Harris on April 23, 1998. Lowe asserts that the nearly two month delay was unreasonable and rendered the disclaimer ineffective as a matter of law. Second, Lowe argues that while the letter of disclaimer, if timely, may have been adequate as a defense against Harris's claim, it was not effective against Lowe, who, as an injured third party, asserted his own claim against plaintiff. Plaintiff counters that it disclaimed in a timely fashion after conducting a full inquiry into the claim. Plaintiff also argues that the disclaimer was effective against Lowe because he never notified Mount Vernon directly about his claim. Rather, notice of the claim came from the insured, not from Lowe, and therefore disclaiming as to Harris was effective against Lowe.

## DISCUSSION

A party moving for summary judgment is entitled to judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The burden to show that no genuine issue of material fact exists lies with the moving party, with all ambiguities resolved, and all inferences drawn, in favor of the non-moving party. *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994). When the evidence is so minimal that no rational juror could find in favor of the non-moving party, the Court should grant summary judgment. *Id.* at 1224.

### A. Timeliness of Plaintiff's Disclaimer

■ Section 3420(d) of the New York State Insurance Law provides that if an insurer wishes to disclaim liability or deny coverage under one of its policies, the insurer must "give written notice as soon as is reasonably possible" to the insured. N.Y. Ins. Law § 3420(d) (McKinney 2000); *see also Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979) (failure of the insurer to give notice as soon as is reasonably possible "precludes effective disclaimer or denial"). This rule holds true even if the insured fails, in the first instance, to provide the insurer with timely notice of the claim. *E.g., Ward v. Corbal-*

*ly, Gartland & Rappleyea,* 207 A.D.2d 342, 343, 615 N.Y.S.2d 430 (2d Dep't 1994); *Kramer v. Interboro Mut. Indem. Ins. Co.,* 176 A.D.2d 308, 308, 574 N.Y.S.2d 575 (2d Dep't 1991). Accordingly, the onus is upon the insurer to justify any delay in notifying the insured of its disclaimer. *Ward,* 207 A.D.2d at 343, 615 N.Y.S.2d 430. The reasonableness of the delay is measured "from the time when the insurer was aware of sufficient facts to disclaim." *Id.* at 344, 615 N.Y.S.2d 430; *see also In re Allcity Ins. Co. [Jimenez],* 78 N.Y.2d 1054, 1056, 576 N.Y.S.2d 87, 581 N.E.2d 1342 (1991) (same).

Determining whether or not the delay in disclaiming was reasonable is generally a question of fact for the jury. *See Hartford Ins. Co.,* 46 N.Y.2d at 1030, 416 N.Y.S.2d 539, 389 N.E.2d 1061. New York courts have held, however, that unexplained delays of two months or more are unreasonable as a matter of law. *See id.* at 1030, 416 N.Y.S.2d 539, 389 N.E.2d 1061; *Ward,* 207 A.D.2d at 344, 615 N.Y.S.2d 430; *Kramer,* 176 A.D.2d at 308, 574 N.Y.S.2d 575; *New York Cent. Mut. Fire Ins. Co. v. Markowitz,* 147 A.D.2d 461, 462–63, 537 N.Y.S.2d 571 (2d Dep't 1989). On the other hand, New York courts have also consistently recognized that a prompt, good faith investigation of the claim by the insurer may justify a delay that would normally be deemed unreasonable absent explanation. *See, e.g., In re Prudential Prop. & Cas. Ins. Co. [Mathieu],* 213 A.D.2d 408, 408, 623 N.Y.S.2d 336 (2d Dep't 1995) (delay of "slightly more than two months" to conduct an investigation deemed reasonable); *Vesta Fire Ins. Corp. v. Seymour,* No. 96–CV–3844, 1996 WL 1057158, at *6 (E.D.N.Y. Dec.17, 1996) (same for a period of "just over three months"); *U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel,* 900 F.Supp. 641, 648–49 (E.D.N.Y.1995) (same for a period of "over two months").

In this case, there is no question that plaintiff engaged in a prompt investigation of the claim. Both parties agree that plaintiff first became aware of the claim when it received the six page fax containing a copy of the firm's letter to Harris and Richardson on March 4, 1998, and that plaintiff promptly assigned the claim to Galsan for investigation. After receiving Harris's written statement on March 24, 1998, Galsan returned its report to plaintiff on March 27, 1998. Plaintiff finally disclaimed by letter dated April 23, 1998. Lowe's timeliness argument is not that the investigation took too long, but that the investigation need never have been commenced. Lowe points out that plaintiff's notice of disclaimer mentions only one basis for disclaiming coverage—Harris's failure to give notice of the fire "as soon as practicable" to plaintiff. Andrea Affirmation, Ex. H. According to Lowe, this ground for disclaimer was readily apparent to plaintiff immediately upon receiving a copy of the firm's letter on March 4, 1998. No investigation was necessary to confirm that Harris had delayed unreasonably in notifying plaintiff because it was clear that she knew about the fire and Lowe's claim at the very latest a few days after December 5, 1997, the day the letter was sent to Harris. Thus, Lowe argues, the fifty days between March 4, 1998, and April 23, 1998, during which the investigation took place, was an unreasonable delay on the part of the plaintiff rendering the disclaimer ineffective as a matter of law.

. It is certainly true that, as of March 4, 1998, when the firm's December 5, 1997 letter to Harris arrived by fax, Mount Vernon knew or should have known that the Estate of Cassandra Lowe was asserting a claim against Harris arising out of the fire of September 27, 1997. Mount Vernon did not know, however, when Harris became aware of the fire—the determining factor of whether she had given

timely notice of the accident to Mount Vernon "as soon as [was] practicable." Lowe implicitly argues that Harris became aware of the fire when she read the December 5, 1997 letter, and that, therefore, Mount Vernon could have assumed she knew a few days after December 5, 1997, when the letter presumably arrived at the listed address. Nevertheless, Mount Vernon had no way of knowing whether Harris, in fact, read the letter at that time or was even present at that address when it arrived. As a result, the Court accepts plaintiff's contention that it needed to independently investigate the facts surrounding Harris's knowledge of the fire. It is perfectly reasonable that the insurer verify the surrounding facts so that, if it chooses to disclaim, it does so on the basis of concrete evidence. *See Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi,* 121 A.D.2d 276, 278, 503 N.Y.S.2d 51 (1st Dep't 1986) (stating that, as a general matter, it is reasonable for insurers to investigate claims). In this case, Galsan was able to secure a written statement signed by Harris stating that she knew of the accident on the date it occurred. *See* Reale Aff., Ex. C. When plaintiff received this statement as part of the Galsan report submitted on March 27, 1998, it had sufficient facts to disclaim.

■ The Court sees no point in discouraging insurers from conducting thorough investigations before disclaiming coverage, as long as they are not used as a dilatory tactic. *See Congregation B'Nai Israel,* 900 F.Supp. at 649. Moreover, simply because a plaintiff may be able to disclaim on a particular ground does not mean that

other grounds, discoverable through investigation, do not exist. As several courts have pointed out, forcing an insurer to issue "piecemeal denials of coverage would frustrate [the insurer's] right to investigate claims." *Wilczak v. Ruda & Capozzi, Inc.,* 203 A.D.2d 944, 945, 611 N.Y.S.2d 73 (4th Dep't 1994); *Congregation B'Nai Israel,* 900 F.Supp. at 649 (quoting *Wilczak* ). For these reasons, the Court finds that plaintiff's prompt investigation into Lowe's claim is an adequate justification for the fifty-day delay from March 4, 1998 to April 23, 1998, and that such delay was reasonable as a matter of law.[1]

### B. Effectiveness of Plaintiff's Disclaimer

■ Under New York law, even if the insured failed to give the insurance carrier timely notice of the accident, a third party claimant, such as Lowe, has an independent right to notify and seek recovery from an insurer, which is unaffected by any delay on the part of the insured. *General Accident Ins. Group v. Cirucci,* 46 N.Y.2d 862, 863–64, 414 N.Y.S.2d 512, 387 N.E.2d 223 (1979); *Aetna Cas. & Sur. Co. v. Rodriguez,* 115 A.D.2d 418, 418, 496 N.Y.S.2d 956 (1st Dep't 1985) (Ellerin, J., concurring); *Lauritano v. Am. Fidelity Fire Ins. Co.,* 3 A.D.2d 564, 570–71, 162 N.Y.S.2d 553 (1st Dep't 1957). Thus, if the third party has exercised this right and the insurer's notice of disclaimer only addresses grounds for disclaimer against the insured, such a disclaimer is effective only against the insurer and not against the third party. *General Accident Ins. Group,* 46 N.Y.2d at 863–64, 414 N.Y.S.2d 512, 387

---

1. Lowe also argues in his reply brief that the twenty-seven (27) day delay from March 27, 1998, when plaintiff received the Galsan report, to April 23, 1998, when it issued its notice of disclaimer, was unreasonable as a matter of law. All of the cases cited by Lowe where the court held the delay was unreasonable were for periods of two months or more.

Here, the delay is less than a month. The Court has located no case where delay of this length was held unreasonable as a matter of law. Moreover, given the time needed to evaluate the report and consider its options, plaintiff's relatively short postponement during this period does not alter the Court's previous finding of reasonable delay.

N.E.2d 223; *Aetna Cas. & Sur.,* 115 A.D.2d at 418, 496 N.Y.S.2d 956; *Utica Mut. Ins. Co. v. Gath,* 265 A.D.2d 805, 806, 695 N.Y.S.2d 839 (4th Dep't 1999). Moreover, the insurer will be estopped from later raising a defense that it did not mention in the notice of disclaimer. *General Accident Ins. Group,* 46 N.Y.2d at 864, 414 N.Y.S.2d 512, 387 N.E.2d 223.

Lowe argues that he gave notice to plaintiff by his letter dated December 5, 1997. The letter was first sent to Harris, who then gave it to her insurance broker, the People's Choice Agency. The People's Choice Agency then transmitted it to The Morstan Agency, Mount Vernon's general agent, who, in turn, faxed it to Mount Vernon on March 4, 1998. According to Vernon, this chain of custody establishes that it was he who notified plaintiff of the accident, rather than the insured. Lowe attempts to bolster this argument by pointing out that on March 10, 1998, right after it received the fax, plaintiff wrote Andrea & Towsky asking for details about the claim and referring to Cassandra Lowe as the "claimant." Andrea Affirmation, Ex. F. According to Lowe, this indicates that plaintiff treated the claim as if it had been received from the claimant, Cassandra Lowe. Finally, Lowe asserts that section § 3420(a)(3) of the New York State Insurance Law controverts plaintiff's argument that it must receive notice of the claim directly from Lowe.

Lowe's arguments are unpersuasive. Plaintiff correctly points out that each of the cases cited by Lowe in support of his argument involve situations where the injured party supplied direct written or oral notice of his or her claim to the insurer. *See General Accident Ins. Group,* 46 N.Y.2d at 863, 414 N.Y.S.2d 512, 387 N.E.2d 223; *Utica Mut. Ins.,* 265 A.D.2d at 806, 695 N.Y.S.2d 839; *Aetna Cas. & Sur.,* 115 A.D.2d at 419, 496 N.Y.S.2d 956; *Legion Ins. Co. v. Weiss,* 282 A.D.2d 576,

577, 723 N.Y.S.2d 235. 282 A.D.2d 576, 723 N.Y.S.2d 235 (2d Dep't 2001); *Eagle Ins. Co. v. Ortega,* 251 A.D.2d 282, 282, 674 N.Y.S.2d 56 (2d Dep't 1998); *United States Liab. Ins. Co. v. Young,* 186 A.D.2d 644, 645, 588 N.Y.S.2d 640 (2d Dep't 1992). As these cases explain, under such circumstances, an insurer must disclaim specifically against the injured party; disclaiming against the insured will not suffice.

These are not the circumstances of this case, however. Lowe's letter of December 5, 1997, did not notify the plaintiff of the claim. The fact that a copy of the letter eventually found its way to Mount Vernon does not mean that it was Lowe who notified plaintiff. Quite the contrary, it would seem that the insured, Harris, was the one who notified plaintiff by sending the letter to her broker, who then forwarded it to Mount Vernon. Where an injured party does not assert its own right to notify the insurance carrier, but rather relies upon the insured to provide notice, "its rights vis-a-vis the insurer remain derivative" such that disclaimer against the insured for untimely notice is sufficient to disclaim against the injured party as well. *United States Liab. Ins. Co. v. Albertell,* No. 92 Civ. 301, 1992 WL 380024, at *5 (S.D.N.Y. Dec. 7, 1992); *see also Agway Ins. v. Alvarez,* 258 A.D.2d 487, 488, 684 N.Y.S.2d 635 (2d Dep't 1999) (the fact that the insured forwarded a copy of the injured party's counterclaim to its insurance carrier did not mean that the injured party had independently notified the carrier of its counterclaim).

None of the cases cited by Lowe refute this point. Lowe places particular reliance on *Utica Mutual,* asserting that it is "on all fours" with the instant case. Def. Lowe's Mem. of Law in Supp. of Mot. for Summ. J at 13. It is not. In that case, the injured party notified the insured by letter of her intention to file a claim. *Uti-*

*ca Mut. Ins. Co.*, 265 A.D.2d at 806, 695 N.Y.S.2d 839. The insured then notified the insurance carrier of the claim and forwarded the injured party's letter. *Id.* However, unlike the instant case, the injured party in *Utica Mutual* provided her own written and oral notice to a representative of the plaintiff in addition to the notice provided by the insured. *Id.* Thus, plaintiff's disclaimer against the insured was not effective against the injured party, who had exercised her independent right to submit notice of her claim. *See id.* At no time did Lowe provide independent notification of his claim to plaintiff.

Nor is the Court persuaded that plaintiff's March 10, 1998 letter to Andrea & Towsky indicates that it was handling the claim as if it were given notice by Lowe. As plaintiff points out, it is often the case that insurance carriers learn about a claim by a letter from the injured party to the insured, which is then forwarded to the insurer. Contacting the claimant is part and parcel of conducting an investigation into the claim. It does not mean that plaintiff was acknowledging that it was Lowe who had notified it of the accident, and the Court declines to so hold. The fact that it referred to Cassandra Lowe as the "claimant" in this letter is of no moment. Lowe was, indeed, a claimant, but again that does not mean that she, or Willie Lowe, was the one who notified the plaintiff of the accident.

Finally, Lowe's assertion that section 3420(a)(3) controverts plaintiff's argument that the injured party's notification must be made directly to the insurer is unavailing. Section 3420(a)(3) provides that "notice given by or on behalf of the insured, or written notice by or on behalf of the injured person ... to any licensed agent of the insurer in this state ... shall be deemed notice to the insurer." N.Y. Ins. Law § 3420(a)(3) (McKinney 2000). Lowe maintains that because notice can be made

"on behalf of the injured person" that direct notification is unnecessary. While it may be true that notification of this kind may suffice, there is no indication that the insured, or any other party to this case, provided notice to Mount Vernon on behalf of Lowe. The six-page fax containing Lowe's letter was sent to Mount Vernon by its general agent to provide Mount Vernon with the materials relating to this claim. There is nothing to suggest that the letter was included to take action on behalf of Lowe. The Court finds, therefore, that because Lowe did not assert an independent claim against plaintiff, plaintiff's disclaimer against Harris also served as a disclaimer against Lowe.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied and plaintiff's cross-motion for summary judgment is granted.

SO ORDERED.